UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNETTE M., § § § Plaintiff, § § v. § Case # 1:20-cv-1805-DB § COMMISSIONER OF SOCIAL SECURITY, § MEMORANDUM § DECISION AND ORDER Defendant. § | |

# INTRODUCTION

Plaintiff Annette M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. xx).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 13. No further briefing was filed. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

# BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and DIB on July 28, 2017, alleging disability beginning July 31, 2013 (the disability onset date), due to: "(1) depression, anxiety, difficulty concentrating; (2) arthritis in both knees (chondromalacia of patella); (3) obesity (BMI=47.43 ki!/m2) 5'5" 285lbs: (4) sleep apnea—C-PAP nightly;

(5) hypertension; (6) diabetic; (7) high cholesterol; (8) pre-cancerous cells in right breast (annual checkups); and (9) OCD." Transcript ("Tr.") 148-49, 173. Plaintiff's claim was denied initially on January 4, 2018, after which she requested an administrative hearing. Tr. 15. On October 17, 2019, Administrative Law Judge Rosanne Dummer (the "ALJ") conducted a video hearing from Falls Church, Virginia. Tr. 15. Plaintiff appeared and testified in Buffalo, New York, and was represented by Sarah A. Frederick, an attorney. *Id*. Sara Statz, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on October 28, 2019, finding that Plaintiff was not disabled. Tr. 15-31. On October 9, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 28, 2019, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.     The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

3

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her October 28, 2019, 2019 decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 31, 2013 through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: diabetes mellitus, hypertension, obesity, obstructive sleep apnea, bilateral knee osteoarthritis, and left knee degenerative joint disease with loose body (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a).[1] The claimant could lift/carry ten pounds occasionally and less than ten pounds frequently, sit six of eight hours, and stand/walk two of eight hours. The claimant should not climb ladders or scaffolds; she could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant should avoid work hazards (i.e., no dangerous moving machinery and no unprotected heights). She should avoid work on wet, slippery, or uneven surfaces (i.e., Ex. 1A).

6. Through the date last insured, the claimant was capable of performing past relevant work as a claims adjudicator. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 31, 2013, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(f)).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Tr. 15-30.

Accordingly, the ALJ determined that for a period of disability and disability insurance benefits protectively filed on July 28, 2017, Plaintiff is not disabled under sections 216(i) and 223(d) of the Act. Tr. 31.

## ANALYSIS

Plaintiff asserts four points of error. First, Plaintiff argues that the ALJ erred when she failed to assess the impact stress had on Plaintiff's ability to perform her past relevant work, or to work in a position in which she would have to regularly interact with coworkers and the public. *See* ECF No. 12-1 at 19-21. Next, Plaintiff argues that the ALJ failed to assess the mental demands of her past relevant work, including work stressors, which undermined the ALJ's determination at step four that Plaintiff was capable of performing her past relevant work. *See id*. at 21-24. Plaintiff next argues that the ALJ failed to consider the cumulative impact of Plaintiff's limitations from her severe and non-severe impairments in formulating her RFC. *See id*. at 24-27. Finally, Plaintiff argues that ALJ erred in her determination that Plaintiff could perform other jobs in the national economy. *See id*. at 27-29.

The Commissioner argues in response that substantial evidence of record demonstrated both that Plaintiff retained the RFC to perform her past relevant work, as well as the RFC to perform other work that exists in significant numbers in the national economy and, therefore, she was not disabled. *See* ECF No. 13-1 at 10-18. The Commissioner further argues that the ALJ properly determined at step two of the sequential evaluation that Plaintiff's mental impairment was non-severe, and her obstructive sleep apnea was one of a combination of ailments that comprised her severe impairment. *See id*. at 10-14. As such, argues the Commissioner, there was nothing inconsistent in the ALJ's finding that Plaintiff retained the RFC to perform sedentary work with environmental and postural limitations despite her combination of severe and non-severe

5

limitations, and the ALJ correctly applied the regulations in finding that Plaintiff's individual impairments when considered together constituted a severe impairment and, therefore, was not required to also consider whether these impairments individually would qualify as a severe impairment.. *See id*. Finally, the Commissioner argues that the ALJ properly relied on the VE's opinion that Plaintiff could perform her past relevant work as a claims adjudicator, and even assuming *arguendo* that Plaintiff could not perform her past relevant work, the ALJ properly determined that Plaintiff retained the RFC to perform other work that exists in significant numbers in the national economy. *See id*. at 14-18.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record, the Court finds that Plaintiff's arguments have some merit in light of the evidence showing Plaintiff's problems appropriately dealing with the public and coworkers in the work setting. In this instance, the ALJ failed to make a thorough evaluation of Plaintiff's individualized reaction to stress as the regulations require. *See* Social Security Ruling ("SSR") 85-15. As such, the Court finds that the ALJ's finding that Plaintiff retained the ability to perform the mental demands of her past relevant work during the alleged period of disability, or that Plaintiff could perform other jobs in the national economy (Tr. 19) was not supported by substantial evidence.

The record reflects that Plaintiff stopped working due to an inability to deal with the stress of her job at the Social Security Administration. Tr. 71, 75. The record evidence supports

6

Plaintiff's testimony that she was directed to seek psychological treatment due to her disruptive reactions to work stress, which included inappropriately interacting with coworkers and the public. Tr. 41-42, 45, 47, 48, 174, 236, 347, 362, 365, 393. Despite the evidence documenting Plaintiff's inability to deal with the stress of her past work, the ALJ did not address the impact of Plaintiff's limitations from stress in the decision.

On March 8, 2013, Plaintiff began seeing psychologist Daniel Anger, Ph.D., BCD[2] ("Dr. Anger"). Tr. 361-62/ She was referred by her office manager and/or EAP consultant after receiving several reprimands at work, the next step of which could result in suspension. Tr. 361. She stated she needed "help with stress" and was also deciding whether or not to take early retirement due to stress. Tr. 362. After treating Plaintiff for six sessions, Dr. Anger opined that Plaintiff's problem dealing with stress had moderately impacted her job performance. Tr. 365.

On April 2, 2013, Plaintiff saw physician assistant Andrea Laudisio-Pinger, RPA-C ("Ms. Laudisio"), for a three-month follow-up appointment for obstructive sleep apnea with residual hypersomnia. Tr. 235-36. Plaintiff reported full compliance with CPAP therapy. She had started Provigil on her last visit and taken the medication for a month without any noticeable difference in her hypersomnia. Tr. 235. Plaintiff indicated she was very stressed at work. Tr. 236. Plaintiff had been seeing a counselor due to "anger episodes" at work and questioned whether depression contributed to her symptoms. *Id*. She was tearful when she discussed her depression and the impact it had on her life. Plaintiff reported that she had been taking Cymbalta for quite some time, but she felt the medication was no longer helpful. *Id*. Ms. Laudisio suggested increasing Plaintiff's dosage of Provigil but ultimately agreed with Plaintiff's request to postpone trying a higher dosage until

---

[2] According to the American Board of Clinical Social Work ("ABCSW"), BCD is a Board Certified Diplomate in Clinical Social Work, a credential issued by ABCSW for advanced clinical generalists, clinical supervisors, children/families practitioners and psychoanalysts. American Board of Clinical Social Work website, https://www.abcsw.org

her depression was better controlled. *Id*. Ms. Laudisio opined that depression could be playing a role in Plaintiff's "continued energy issues" and encouraged her to pursue psychiatric treatment. *Id*.

On April 12, 2013, Plaintiff saw Polina Purizhansky, M.D. ("Dr. Purizhansky"), for a recheck of knee pain. Tr. 239. She complained of pain and swelling in both knees, and leg cramps. *Id*. Plaintiff reported that she continued to have trouble staying awake during the day despite "adequately treated" obstructive sleep apnea, and she continued to be depressed. Tr. 240. On review of symptoms, Dr. Purizhansky noted positive for pain in both knees, malaise, fatigue, and depression. *Id*. Among other things, Plaintiff was noted to be morbidly obese, insulin resistant, and pre-diabetic. *Id*. Her dosage of Cymbalta was increased from 30 mg to 60 mg. Tr. 241.

Plaintiff had a follow-up visit with Dr. Purizhansky on October 11, 2013. Tr. 244. Plaintiff reported she was "feeling much better" since her retirement two months before. *Id*. Dr. Purizhansky noted that Plaintiff had lost 20 pounds. However, she remained morbidly obese at 265 pounds. and continued to have some malaise and fatigue as well as knee pain. *Id*.

Consultative psychologist Susan Santarpia Ph.D. ("Dr. Santarpia"), evaluated Plaintiff on November 30, 2017. Tr. 582-86. Dr. Santarpia noted that Plaintiff was not currently employed and left her last job as a claims representative for Social Security in July 2013 after 22 years "due to stress related to the work environment." Tr. 582. Plaintiff endorsed waking 1-2 times nightly, increased appetite, crying spells, loss of usual interest, diminished sense of pleasure, and social withdrawal. Tr. 582-83. She attained some relief with Abilify and had been better able to sleep with the medication. Tr. 583. Plaintiff reported her anxiety symptoms including excessive apprehension and worry, restlessness, and trouble concentrating. Plaintiff's affect was dysphoric and her mood, dysthymic, and her insight and judgment were assessed as fair. Tr. 583-84.

Dr. Santarpia opined Plaintiff had a mild impairment regulating emotion, controlling behavior, and maintaining wellbeing. Dr. Santarpia assessed that Plaintiff could understand, remember, and apply complex directions and instructions; make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; and sustain an ordinary routine and regular attendance at work. Tr. 584. Dr. Santarpia recommended counseling to assist with coping skills and opined that Plaintiff's psychiatric problems did not significantly interfere with her daily functioning. Tr. 585.

State agency psychological consultant Dr. T. Bruni reviewed the evidence of record on December 22, 2017. Tr. 70-72. Dr. Bruni assessed that Plaintiff had no limitations in understanding, remembering, and applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. Tr. 71. By way of additional explanation for his findings, Dr. Bruni noted that Plaintiff reported getting distracted easily and problems with her last two bosses due to added pressures of completing more in a timely manner. Tr. 71. Dr.Bruni further noted that Plaintiff "took early out" due to her problems with bosses and co-workers and the "intense demands" of her job. *Id*. Dr. Bruni concluded that Plaintiff's psychiatric impairment was not severe. Tr. 72.

On September 5, 2019, licensed mental health counselor Michelle Marabella, LMHC ("Ms. Marabella"), submitted a statement and treatment summary. Tr. 686. She had been treating Plaintiff for weight loss and general anxiety since January of 2019. *Id*. Plaintiff's symptoms included rumination, excessive worry, procrastination, low motivation, fatigue, and limited energy, and her treatment goals included increasing her activity level, improving her health, losing weight, and stabilizing her mood. *Id*. Ms. Marabella opined that, until Plaintiff was able to manage and sustain her goals, she was limited in her ability to focus, concentrate, and effectively meet

work expectations. *Id*. Although Plaintiff continued to attend psychotherapy sessions, she had yet to solidify an effective treatment plan. *Id*.

In considering Plaintiff's mental functioning in the area of interacting with others, the ALJ noted that Plaintiff alleged she had difficulty getting along with others, including her family, and dealing appropriately with authority. Tr. 18. The ALJ also noted Plaintiff's testimony that she left her job in 2013 due to difficulty getting along with coworkers, supervisors, and the public. Tr. 18, 2, 45-46. However, the ALJ also noted that Plaintiff was able to get along with her friends, shop, and spend time with friends; met with friends for lunches or dinners; and traveled regularly and she went to the senior center regularly. Tr. 18, 190, 347, 350, 353, 583, 662. Based on these findings, the ALJ determined that Plaintiff had only a mild limitation in interacting with others. Tr. 18.

However, the ALJ failed to make a thorough evaluation of Plaintiff's individualized reaction to stress in the workplace. *See* SSR 85-15. SSR 85-15 states: "it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings," and "[t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." SSR 85-15. As a result, SSR 85-15 recognizes that "[d]etermining whether these [mentally impaired] individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult," and "requires careful consideration of the assessment of RFC," including whether the individual retains the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*.

In considering whether an individual is capable of working despite any difficulties attributable to his or her mental impairments, SSR 85-15 thus "emphasizes the importance of

10

thoroughness in evaluation on an individualized basis," and explains that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id*. "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." *Id*. "Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." *Id*. This was not done in this case.

It was also error for the ALJ to overlook Dr. Anger's opinion that dealing with stress impacted Plaintiff's job performance to a moderate degree. Tr. 365. *See Taylor v. Comm'r of Soc. Sec.*, No. 08-CV-0846 VEB, 2011 WL 940319, at *4 (N.D.N.Y. Mar. 16, 2011), (faulting the ALJ for failing to make any meaningful inquiry into the level of stress associated with the plaintiff's past relevant work before determining she could still perform her past work). "Error involving failure to consider relevant evidence "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the Plaintiff than the evidence considered." *Simpson v. Astrue*, No. 11-CV-6500JWF, 2013 WL 4495090, at *12 (W.D.N.Y. Aug. 19, 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir.2010)).

Based on the foregoing, the Court finds that the ALJ's finding that Plaintiff retained the ability to perform the mental demands of her past relevant work was not supported by substantial evidence. While the claimant bears the burden of proving an inability to perform past relevant work, "the Commissioner has the duty to adequately inquire into the demands of [claimant's] past relevant work so that a correct decision can be reached as to [claimant's] ability or inability to perform it." *Taylor*, 2011 WL 940319, at *4 (quoting *Wood–Monroe v. Astrue*, No. 05–CV–1570,

2008 WL 4283412, at *6 (N.D.N.Y. Sep't 16, 2008)). For similar reasons, the ALJ's finding that Plaintiff could perform other jobs in the national economy is likewise unsupported.

Because the ALJ failed to conduct a thorough evaluation in accordance with SSR 85-15's guiding principles emphasizing the individualized nature of the inquiry, the Court finds that remand is warranted for proper evaluation of Plaintiff's mental RFC. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F.Supp.3d 241, 248 (W.D.N.Y. 2019) ("The ALJ's failure to explain her assessment of portions of [the] medical opinion prevents the Court from meaningfully reviewing [her] decision, and warrants remand.") (internal citations and quotation marks omitted); *see also Devine v. Saul*, 2020 WL 1649819, at *7 (W.D.N.Y. Apr. 3, 2020) (finding the ALJ by failing to discuss the examiner's opinion that the plaintiff had moderate limitation in dealing with stress, failing to provide an analysis of the stress limitation, and failing to explain where he rejected it or intended to address the limitation in the RFC determination).

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and this matter

is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

    **IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE